**MCGUIREWOODS LLP**
Adam F. Summerfield (SBN #259842)
1800 Century Park East
8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendant Nationstar Mortgage LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CINDY J. NEUDORFF<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC;<br>NBS DEFAULT SERVICES, LLC; and<br>DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL BY DEFENDANT NATIONSTAR MORTGAGE LLC PURSUANT TO 28 U.S.C. § 1332**<br><br>**[Diversity Jurisdiction]** |

**TO ALL ATTORNEYS OF RECORD, THE CLERK OF THE ABOVE-ENTITLED COURT, AND THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:**

**PLEASE TAKE NOTICE** that Defendant Nationstar Mortgage LLC ("Nationstar") hereby provides this Notice of Removal pursuant to 28 U.S.C. §§1332, 1441, and 1446, based on diversity of citizenship.  The action is hereby removed to this Court from the State Court, as more particularly set forth below.

**THE STATE COURT ACTION**

1.     On November 12, 2014, Plaintiff Cindy J. Neudorff ("Plaintiff") commenced an action entitled *Neudorff v. Nationstar Mortgage, LLC et al.*, in the Superior Court of the State of California, County of Riverside, Case No. RIC1410837 (the "State Court Action").  A copy of the complaint is attached hereto

as <u>Exhibit A</u>.  Attached collectively hereto as <u>Exhibit B</u> are all other documents in Nationstar's possession that it received from Plaintiff in the State Court Action. Nationstar was served via certified mail with a notice and acknowledgment of receipt on November 21, 2014.  It signed the acknowledgment on December 4, 2014

## DIVERSITY OF CITIZENSHIP AND VENUE

2.      This Court has jurisdiction of this case under 28 U.S.C. § 1332 because the citizenship of Plaintiff is entirely diverse from the citizenship of all Defendants, and the amount in controversy exceeds $75,000.00.  As shown below, Plaintiff is a citizen of California; Defendant Nationstar is a citizen of Delaware and Texas. Defendant NBS Default Services, LLC ("NBS") is a citizen of California, but its citizenship should be ignored for the purpose of the diversity jurisdiction analysis.

**A.      Plaintiff is a Citizen of California.**

3.      Nationstar is informed and believe that at all relevant times Plaintiff was and is domiciled in and is a citizen of the United States and the state of California.  In *Kanter v. Warner-Lambert Co.,* the Ninth Circuit held that a "person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." 265 F.3d 853, 857 (9th Cir. 2001).  Plaintiff alleges that she "is, and at all times relevant to the facts herein was, an individual residing in real property commonly known as 5191 Inglestone Drive, Hemet, CA 92545… located in the County of Riverside, in the State of California. Ex. A, ¶ 1.  Thus, Plaintiff is a citizen of California for diversity purposes.

**B.      Nationstar is a Citizen of Delaware and Texas.**

4.      For purposes of determining diversity of citizenship, a limited liability company has the citizenship of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Nationstar's members are Nationstar Sub1 LLC (which owns 99% of Nationstar) and Nationstar Sub2 LLC (which owns 1% of Nationstar).  Both are also Delaware limited liability companies.

1   Nationstar Sub1 LLC and Nationstar Sub2 LLC each have one member – Nationstar

2   Mortgage Holdings, Inc., which is a Delaware corporation with its principal place of

3   business in Texas.  Pursuant to 28 U.S.C. § 1332(c), a defendant corporation is a

4   citizen both of the state in which it is incorporated and the state in which it

5   maintains its principal place of business.  *See Hertz Corp. v. Friend*, 130 S. Ct.

6   1181, 1183 (2010) (holding "[t]he phrase 'principal place of business' in

7   §1332(c)(1) refers to the place where a corporation's high level officers direct,

8   control, and coordinate the corporation's actions i.e. its 'nerve center' which will

9   typically be found at its corporate headquarters").  Therefore, defendant Nationstar

10  Mortgage, LLC is a citizen of Delaware and Texas for the purposes of diversity

11  jurisdiction.

12      **C.    NBS's Citizenship is to be Ignored for Purposes of the Diversity**

13             **Jurisdiction Analysis.**

14      5.    The citizenship of NBS, which Plaintiff "is informed, believe, and

15  thereon alleges… is a limited liability corporation, registered in the state of

16  California, doing business in the County of Riverside, State of California as a

17  trustee" (Ex. A, ¶ 3), is irrelevant to the diversity inquiry because it is a nominal

18  party.  In determining whether complete diversity exists, courts "ignore the

19  citizenship of nominal or formal parties who have no interest in the action, and are

20  merely joined to perform the ministerial act of conveying the title if adjudged to the

21  complainant."  *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d

22  867, 873 (9th Cir. 2000) (internal quotes omitted).  The Ninth Circuit has explained

23  that "[a] nominal defendant is a person who holds the subject matter of the litigation

24  in a subordinate or possessory capacity as to which there is no dispute.  The

25  paradigmatic nominal defendant is a trustee, agent or depositary who is joined

26  purely as a means of facilitating collection."  *S.E.C. v. Colello*, 139 F.3d 974, 676

27  (9th Cir. 1998) (internal quotes, alterations, and citations omitted).

28

NOTICE OF REMOVAL

6.     NBS filed a declaration of non-monetary status ("DNMS") in the State Court Action on December 1, 2014.  Attached as <u>Exhibit C</u> is a true and correct copy of the DNMS.

7.     Pursuant to Section 2924l of the California Civil Code, upon the filing of the DNMS, NBS "transformed into a nominal party whose citizenship is disregarded for purposes of assessing diversity jurisdiction." *Cabriales v. Aurora Loan Services*, 2010 U.S. Dist. LEXIS 24726, *6-7 (N.D. Cal. Mar. 2, 2010) (citing Cal Civ. Code § 2924l and *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)); *see also, e.g. Canas v. Citimortgage, Inc.,* 2013 U.S. Dist. LEXIS 80893 (C.D. Cal. June 7, 2013); *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

8.     Additionally, NBS is a nominal party as Plaintiff has not made substantive claims against NBS outside of its duties as trustee. *See Canas*, 2013 U.S. Dist. LEXIS 80893, at *3, 9-10.  In fact, Plaintiff makes no substantive allegations against NBS at any point in her Complaint after identifying it in the third paragraph.  Ex. A.

9.     Moreover, in addition to being a nominal party, NBS is a sham defendant that has also been fraudulently joined in this action.  "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1988); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001) ("one exception to the requirement of complete diversity is where a non-diverse defendant has been fraudulently joined."). Specifically, when a trustee under a deed of trust has not exceeded its role in that capacity, and no other claims are asserted against it outside of that role, it "is a sham defendant whose naming does not defeat diversity jurisdiction." *Rieger v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 58232, at *18 (N.D. Cal. 2013).  Joinder of a non-diverse defendant is fraudulent if "the plaintiff fails to state a cause of

action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chem. Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Fraudulent joinder is also conclusive where it is demonstrated that "there is no possibility that the plaintiff will be able to establish a cause of action in the State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).

10. When testing the applicability of federal diversity jurisdiction, the Court is not limited to the four corners of the pleadings. *W. Am. Corp. v. Vaughan-Bassett Furniture Co., Inc.*, 765 F.2d 932, 936 (9th Cir. 1985); *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C. D. Cal. 1998).

### Plaintiffs cannot state any Claim against NBS.

11. NBS is insulated from any claims alleged in Plaintiff's Complaint. Generally speaking, even if Plaintiff had alleged specific misconduct against NBS (which she did not), Plaintiff misunderstands NBS's duty as trustee under the deed of trust. "[T]he trustee's ***only*** obligations are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." *Lopez v. JP Morgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 100510, at *17-18 (E.D. Cal. 2012) (quoting *Heritage Oaks Partners v. First Am. Title Ins. Co.*, 155 Cal. App. 4th 339, 345 (2007)). NBS had no role in determining whether Plaintiff was in default, whether the default has been cured, or whether any other statutory requirements had been followed by the lender (or beneficiary). The beneficiary under the deed of trust, or the servicer (Nationstar), makes those determinations, and directs the trustee to commence or suspend foreclosure proceedings accordingly. *See* Cal. Civ. Code § 2924c(a)(2), 2924c(b)(1), 2923.5(a)(2), 2923.5(d). Thus, NBS was under no obligation to provide any information purporting to show Nationstar's enforcement rights under the note.

12.     Furthermore, a trustee under a deed of trust may record a "notice of default or otherwise commence the foreclosure process [only] when acting within the scope of authority designated by the holder of the beneficial interest." Cal. Civ. Code § 2924(a)(6).  Here, the holder of the beneficial interest under the deed of trust was Nationstar, which *expressly* authorized NBS to record the notice of default.  All pre-recording requirements inure *only* to the beneficiary, who then informs the trustee after taking those actions.

13.     Even if Nationstar had given incorrect information to NBS, as trustee, NBS enjoys immunity to the extent in relied in good faith on information furnished by the servicer.  As stated in *Nicosia v. Wells Fargo Bank*, 2010 U.S. Dist. LEXIS 115403 (N.D. Cal. 2010):

> Loanstar [the trustee] is… entitled to immunity pursuant to Cal. Civil Code § 2924, which deals with transfers and sales of deeds of trust, and expressly provides that "the trustee shall incur *no liability* for good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage." *See* Cal. Civil Code § 2924(b).  To the extent Loanstar's conduct occurred in reliance on the lender's information as provided under California statutes and § 2924, Loanstar is immune, in the absence of allegations establishing bad faith – which have not been stated here.  Accordingly, plaintiffs'… claim against Loanstar is dismissed *with prejudice.*

*Id.*, at *2-3 (emphases added).

14.     Here, as in *Nicosia*, NBS cannot be liable to Plaintiff.  Notwithstanding the fact that Plaintiff fails to allege any substantive claims against NBS within the eight causes of action, NBS's only duty in this case was to take steps to initiate foreclosure proceedings, and it did so pursuant to specific instructions by the loan servicer.  It was Nationstar's duty to comply with pre-recording obligations (which it did), and it informed the trustee of its compliance.

15.     Accordingly, the citizenship of Plaintiff is diverse from that of the only necessary Defendant (Nationstar), and Nationstar is not a citizen of California.

**D.     The Citizenship of the Doe Defendants is Disregarded for Purposes of the Diversity Analysis.**

16.     The remaining Defendants are named as "Doe" defendants, and as such, are disregarded in determining the existence of diversity.  28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

17.     Currently, there are no other named parties to this action. Consequently, complete diversity is established by virtue of the preceding paragraphs.

18.     Venue lies in the United states District Court for the Central District of California, pursuant to 28 U.S.C. § 1391(b) and 1441(a), because the State Court Action was filed in this District and this is the judicial district in which the action arose.

## AMOUNT IN CONTROVERSY

19.     Generally, "[t]he amount in controversy is determined from the allegations or prayer of the complaint."  Schwarzer et al., *Fed. Civ. Proc. Before Trial*, ¶ 2:450 (2009) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (holding that an inability to recover an amount adequate to give the court jurisdiction does not oust the court of jurisdiction).

20.     Plaintiff does not seek a specific amount of damages in their Complaint.  However, a defendant may remove a suit to a federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy.  Where, as here, a plaintiff alleges no specific amount of damages, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See Lowdermilk v. United*

1    *States Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007); *Abrego v. Dow Chemical Co.,*

2    443 F.3d 676, 683 (9th Cir. 2006).  To satisfy the preponderance of the evidence

3    test, a defendant must provide evidence that "it is more likely than not" that the

4    amount in controversy is satisfied.  *See Sanchez v. Monumental Life Ins. Co.,* 102

5    F.3d 398, 404 (9th Cir. 1996).  In determining the amount in controversy, the Court

6    may look beyond the complaint to determine whether the amount in controversy is

7    met.  *See Abrego*, 443 F.3d at 690.

8          21.    Although Nationstar denies that Plaintiff is entitled to recover any

9    amount, and specifically denies that Plaintiff is entitled to the relief in the various

10    forms sought, the allegations stated in the Complaint place in controversy more than

11    $75,000.00, exclusive of interest and costs.

12          22.    "In actions seeking declaratory or injunctive relief, it is well established

13    that the amount in controversy is measured by the value of the object of the

14    litigation."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)

15    (superseded by statute on other grounds as stated in *United Food & Commer.*

16    *Workers Union Local 751 v. Brown Grp.*, 5517 U.S. 544, 557 (1996).  "If the

17    primary purpose of a lawsuit is to enjoin a bank from selling or transferring

18    property, then the property is the object of the litigation."  *Reyes, et al. v. Wells*

19    *Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at *12-13 (N.D. Cal. 2010).

20          23.    Here, the focal point of the litigation is Plaintiff's secured loan.  *See*

21    *generally* Ex. A.  The key object of the litigation is to enjoin a foreclosure sale of

22    the real property securing Plaintiff's loan after Plaintiff failed to make her payments

23    as required.

24          24.    The subject of this action is a $308,000.00 loan to Plaintiff from her

25    lender (Lehman Brothers Bank, FSB), originated on or about January 13, 2006,

26    secured by a deed of trust on the real property located at 5191 Inglestone Drive,

27    Hemet, California 92545, which was recorded in the Riverside County Recorder's

28

NOTICE OF REMOVAL

1  Office on January 27, 2006 as Document No. 2006-0064810.  A true and correct

2  copy of this deed of trust is attached as Exhibit D.

3       25.    As of October 24, 2014, due to Plaintiff's failures to make her

4  payments, her outstanding balance on her loan was estimated at $345,404.12, as

5  reflected in a Notice of Trustee's Sale, recorded in the Riverside County Recorder's

6  Office on October 24, 2014 as Document No. 2014-0404516.  A true and correct

7  copy of this notice of trustee's sale is attached as Exhibit E.

8       26.    Here, Plaintiff seeks, among other relief, a "temporary restraining

9  order, preliminary injunction and permanent injunction prohibiting Defendants

10  from… foreclosing on property of California homeowners, including Plaintiff,

11  without considering her for within [sic] their guidelines."  Ex. A, at Prayer, ¶ 2.

12       27.    The equitable relief alone, if granted, would nullify Nationstar's right

13  to the real property securing Plaintiff's loan should she continue to fail to make her

14  payments.

15       28.    Moreover, Plaintiff seeks "disgorgement of Defendants' illegal profits

16  and gain [sic], including but not limited to all foreclosure fees and costs charged

17  California homeowners, including Plaintiff."  *Id.*, at Prayer, ¶ 3.  Although

18  Nationstar does not have exact figures, all foreclosure-related fees and costs charged

19  to homeowners throughout the state of California exceeds $75,000.00 by a

20  preponderance of the evidence.[1]

21       29.    Alternatively, Plaintiff could be entitled to the greater of treble

22  damages or $50,000.00 for her claims that Nationstar violated Cal. Civ. Code §§

23  2923.6, 2923.7, or 2923.55 (Ex. A, at ¶¶ 31-40).

24  _____

25  [1] An exact determination of the amount is not necessary, as long as the amount would likely
exceed the jurisdictional minimum.  *See Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 988

26  n.2 (C.D. Cal. 2012) (The object of this litigation is either Plaintiff's… residence, *which is likely*

27  worth more than the jurisdictional amount of $75,000, or the amount owing under the notice of
default.") (emphasis added).

28

30.     Further, if Plaintiff were to obtain either equitable or monetary relief, she would also be entitled to attorneys' fees, which would be added to the amount in controversy.  Cal. Civ. Code § 2924.12(i).

31.     Accordingly, the jurisdictional amount needed to establish diversity jurisdiction has been met, and this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  Therefore, this action may be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

## THIS NOTICE OF REMOVAL IS TIMELY AND PROPER.

32.     This notice of removal is timely, pursuant to 28 U.S.C. § 1446(b). Nationstar was served with the summons and complaint via mail, accompanied with a notice and acknowledgment of receipt, on November 21, 2014.  Nationstar signed and returned the notice and acknowledgment of receipt on December 4, 2014. Nationstar has not appeared in the State Court Action, and its time to respond to the Complaint has not expired.

33.     Counsel for Nationstar has communicated both with counsel for all other Defendants, and all other Defendants have represented to Nationstar that they consent to the removal of the State Court Action.  *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (requirement that codefendants "join" in removal is met when one defendant avers that all defendants have consented to removal).

34.     Pursuant to 28 U.S.C. § 1446(a), Nationstar files this Notice in the District Court of the United States for the district and division within which the State Court Action is pending.

35.     Pursuant to 28 U.S.C. § 1446(d), a copy of this notice will promptly be served on Plaintiffs in the State Court Action, and notice thereof will be filed with the Clerk of the Riverside County Superior Court.

1    WHEREFORE, Nationstar Mortgage LLC hereby removes Riverside County

2  Superior Court Case No. RIC1410837 to the United States District Court for the

3  Central District of California, Eastern Division.

4

5  DATED: December 19, 2014              Respectfully Submitted,

6

7                                       MCGUIREWOODS LLP

8

9                                       By: _____

10                                              Adam F. Summerfield
                                         Attorneys for Defendant
11                                       Bank of America, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT  A

Kettner Law Corporation
Marc Applbaum (SBN 222511)
2150 West Washington Street #104
San Diego, CA 92110
Tel: (619) 756-7300
Fax: (888) 809-4658
marc@kettnerlawcorp.com

Attorney for Plaintiff,

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 12 2014

R. Alessandro

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

1410837

CINDY J. NEUDORFF

Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC; NBS
DEFAULT SERVICES, LLC; and DOES 1
through 50, inclusive,

Defendants.

Case No. **RIC**

VERIFIED COMPLAINT FOR:

1. VIOLATION OF HOMEOWNERS'
   BILL OF RIGHTS
2. STATUTORY UNFAIR COMPETITION
   -- CALIFORNIA BUSINESS AND
   PROFESSIONS CODE §17200 ET SEQ.
3. COMMON LAW UNFAIR
   COMPETITION
4. BREACH OF COVENANT OF GOOD
   FAITH AND FAIR DEALING
5. NEGLIGENCE
6. NEGLIGENT INFLICTION OF
   EMOTIONAL DISTRESS
7. FOR DECLARATORY RELIEF
8. FOR INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

Plaintiff, CINDY J. NEUDORFF, declares as follows:

By Fax

- 1 -

NEUDORFF v. NATIONSTAR MORTGAGE - VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

## PARTIES

1.     Plaintiff, CINDY J. NEUDORFF, ("Plaintiff") is, and at all times relevant to the facts herein was, an individual residing in real property commonly known as **5191 Inglestone Drive, Hemet, CA 92545** ("subject property") located in the County of Riverside, in the State of California.

2.     Plaintiff is informed and believes and based thereon alleges that Defendant NATIONSTAR MORTGAGE, LLC ("NATIONSTAR") is, and at all times relevant to the facts herein was, a limited liability corporation, registered in the state of California, doing business in the County of Riverside, State of California as a loan servicer and investor.

3.     Plaintiff is informed and believes and based thereon alleges that Defendant NBS DEFAULT SERVICES, LLC ("NBS") is, and at all times relevant to the facts herein was, a limited liability corporation, registered in the state of California, doing business in the County of Riverside, State of California as a trustee.

4.     The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiff who sues each Defendant by such fictitious names. Plaintiff is informed and believe and based thereon allege each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, were responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names of capacities of DOES 1 through 50, they will amend this complaint accordingly.

5.     Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-defendants, and in committing the acts herein allege, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-defendants.

- 2 -

NEUDORFF v. NATIONSTAR MORTGAGE - VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter as the Subject Property is located in the County of Riverside, California.

7.      In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

8.      Defendants herein purposefully directed their activities to the State of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Riverside, out of which this action arises and which form the basis of this action.

9.      Defendants either are entities duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

10.     Venue is proper for this Court since the Subject Property (described below) is located in the County of Riverside and because events or events out of which this action arises and which form the basis for this action arise in the County of Riverside.

## II. GENERAL ALLEGATIONS
## GENERAL AND FACTUAL ALLEGATIONS
### The Home Affordable Modification Program & "Dual Tracking"

11.     Pursuant to the Emergency Economic Stabilization Act of 2008, the U.S. Department of Treasury implemented the Home Affordable Modification Program ("HAMP") as a program designed to provide affordable mortgage loan modifications and other alternatives to foreclosure for eligible borrowers. *See* Pub.L. No. 110-343, 122 Stat. 3765 (codified as amended to 12 U.S.C. §§ 5201, 5211-5241. The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.

12.     Under HAMP, loan servicers are provided with at least $1,000 incentive payments from the government for each permanent mortgage loan modification complete. *See Bosque* 762

- 3 -

1   F.Supp.2d 342 (2011), at 347. However, lenders have misused the HAMP system, by engaging

2   in what Attorney General call, "dual tracking," but for homeowners struggling to avoid

3   foreclosure it may as well be called double-crossing. Dual tracking refers to what is now a

4   common lender tactic, where while a borrower in default seeks an alternative loss mitigation

5   strategy (e.g. a short sale or loan modification), the lender quietly continues to pursue foreclosure

6   at the same time. In the meanwhile, in order to drag out the process, the bank sends ongoing of

7   requests to the borrower to send additional documentation (which is often documents the

8   borrower has already provided). As the borrower is lulled into thinking that his or her home will

9   not be taken away, and as the bank continues to send ongoing duplicate requests for more

10  information, the trustee's sale date sneaks upon the borrower and on that sale date the bank

11  immediately swoops in and conducts the trustee's sale in the midst of the loan modification

12  process.

13          13.     As a result of the lender's misuse of the HAMP system as well as unsound banking

14  practices, effective January 1, 2013, Attorney General Kamala D. Harris's Homeowner Bill of

15  Rights protects homeowners and borrowers during the mortgage and foreclosure process. The

16  Homeowner Bill of Rights prohibits a series of inherently unfair bank practices that have

17  needlessly forced thousands of Californians, including Plaintiff, into defaulting on their

18  mortgages. The law restricts dual-track foreclosures, where lender forecloses on a borrower

19  despite being in discussions over a loan modification to save the home. Lenders are now legally

20  obligated to ensure a borrower receives "meaningful" opportunity to be considered for any and

21  all options available to avoid foreclosure. It also guarantees struggling homeowners a single point

22  of contact at their lender with knowledge of their loan and direct access to decision makers, and

23  imposes civil penalties on fraudulently signed mortgage documents. In addition, homeowners

24  may require loan servicers to document their right to foreclose.

25          14.     The Homeowner Bill of Rights consists of a series of related bills including two

26  identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng,

27  Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg). Both

28

1  of which ultimately give rights back to borrowers and create a system in which banks can be held
2  accountable for pursuing their own interests above the borrowers.

3      15.    On or about January 27, 2006, Plaintiff financed the Subject Property for
4  $308,000. As evidence of the loan, Plaintiff executed a promissory note ("Note"), and
5  concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of
6  Trust for the Subject Property was recorded as Document No. 2006-0064810 in the Official
7  Records of the Riverside County Recorder's Office. The named Trustee in the Deed of Trust was
8  "Chicago Title." The named Lender in the Deed of Trust was "Lehman Brothers Bank, FSB."

9      16.    Plaintiff is informed and believes that NATIONSTAR began servicing her home
10  loan.

11     17.    Subsequently, Plaintiff, like many other American homeowners, began
12  experiencing financial hardship as a result of the recession and fell behind on her loan repayments.
13  Plaintiff immediately began contacting NATIONSTAR to explore any and all available options
14  to get caught up with her mortgage payments, specifically seeking a loan modification.

15     18.    On or about June 4, 2013, Defendants caused to be recorded an Assignment of
16  Deed of Trust. The Assignment of Deed of Trust purported to transfer the beneficial interest under
17  the Deed of Trust to Defendant, NATIONSTAR. The Assignment of Deed of Trust was recorded
18  as Document No. 2013-0266012 in the Official Records of the Riverside County Recorder's
19  Office.

20     19.    On or about May 25, 2014, Defendants caused to be recorded a Substitution of
21  Trustee. The Substitution of Trustee purported to replace the original trustee under the Deed of
22  Trust with Defendant, NBS. The Substitution of Trustee was recorded as Document No. 2014-
23  0234263 in the Official Records of the Riverside County Recorder's Office.

24     20.    During this time, Plaintiff had been working with NATIONSTAR in pursuit of
25  foreclosure assistance. Plaintiff experienced both inefficient communication and untimely
26  updates from NATIONSTAR, forcing her further into default.

27

28

NEUDORFF v. NATIONSTAR MORTGAGE - VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF

21.     Plaintiff was instructed to send documents and all required forms to NATIONSTAR for review. Plaintiff repeatedly had to resend documents as NATIONSTAR continuously claimed no paperwork was ever received. Once NATIONSTAR finally began the review process, Plaintiff tried diligently to contact them for updates. After months of futile contact with NATIONSTAR, Plaintiff was finally informed even more documents were required.

22.     Plaintiff finally reached NATIONSTAR and asked what other alternatives she had as the loan modification application had not yet been approved or denied and the original sale date of Plaintiff's home was soon approaching. Plaintiff received no further assistance and no modification was approved.

23.     On or about July 21, 2014, Kylie Thomas, purporting to be an agent of NBS, alleging to be the trustee under the Deed of Trust, caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") in the Official Riverside County Recorder's Office Records as Document No. 2014-0269393.

24.     On or about October 24, 2014, Nicole Rodriguez, purporting to be an authorized signer of NBS, caused to be recorded a Notice of Trustee's Sale. The Notice of Trustee's Sale was recorded as Document No. 2014-0404516 in the Official Records of the Riverside County Recorder's Office.

25.     Defendants failed to abide by Civil Code 2923.55 due to the fact that they did not review Plaintiff's financial situation and further did not advise her of all options available to avoid foreclosure.

26.     NATIONSTAR failed in their obligations to both offer assistance to Plaintiff prior to the Notice of Default and meeting communication requirements once Plaintiff was able to submit a request. Further, NATIONSTAR did not offer Plaintiff a meaningful review as required by California law.

27.     Defendants are actively moving toward foreclosure of the home and took clear steps to satisfy this state's requirements toward a non-judicial foreclosure, including recording a

1   notice of default and notice of trustee's sale.  At present and despite the ongoing good faith

2   negotiations, the trustee's sale is scheduled for November 17, 2014.

3         28.    Plaintiff now faces the loss of the Subject Property, as well as lost the opportunity

4   to pursue foreclosure prevention options that she would have pursued but for the Defendant's

5   violation of California *Civil Code* section 2924 *et. seq.* Defendants violated communication

6   requirements under the California Homeowners Bill of Rights and failed to rescind the Notice of

7   Default to remedy said violations.

8         29.    Consequently, Plaintiff is informed and believes and based thereon alleges that

9   the negotiations were not in good faith, and were a mere "smoke screen" for use by defendant to

10  lull Plaintiff into a state of complacency while her home is foreclosed on and taken from her.

11        30.    By way of this Complaint, Plaintiff seeks a temporary restraining order, followed

12  by a preliminary injunction, enjoining Defendants from selling Plaintiff's Property at auction.

13  Plaintiff also seeks damages for Defendants blatant violation of the requirements of California

14  Civil Codes §§ 2923.55, 2923.6, 2923.7, 2923.9, 2924.10, 2924.11, 2924.12.

15

16                        **FIRST CAUSE OF ACTION**

17          **VIOLATION OF CALIFORNIA HOMEOWNERS' BILL OF RIGHTS**

18                           (Against ALL Defendants)

19        31.    By this reference, Plaintiff incorporate each and every fact alleged in paragraphs

20  1 through 30 above, as though fully set forth herein.

21        32.    California Civil Code section 2923.7 provides that upon the request of a

22  foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point

23  of contact and provide the borrower one or more direct means of communication with the single

24  point of contact."

25        33.    Despite Plaintiff's request for assistance with an alternative to foreclosure, the

26  numerous representatives at NATIONSTAR that Plaintiff spoke with were unable and/or

27  unwilling to help plaintiff and consistently gave her vague answers to questions. Said

28

- 7 -

1   representatives failed to offer adequate assistance to Plaintiff including further instructions and

2   status updates regarding her application. It quickly became apparent to Plaintiff that she was not

3   speaking to anyone involved with the decision to foreclose on her home.

4        34.    California Civil Code section 2924.18 prohibits a mortgage servicer from

5   commencing or continuing the foreclosure process (i.e recording a NOD or NOS, or conducting

6   a trustee's sale) pending a completed review of a loan modification application submitted by a

7   borrower and until after the borrower has been provided with a written decision about eligibility

8   for a loan modification.

9        35.    Plaintiff alleges Defendants continued the foreclosure process while claiming she

10  was in review for a loan modification. NATIONSTAR assured Plaintiff that her complete loan

11  modification application had been received and that no documents were missing. During this

12  time, a Notice of Default was recorded. Following, NATIONSTAR contacted Plaintiff notifying

13  her that documents were in fact missing.

14       36.    Per California Civil Code 2923.6, if a loan modification application is denied, a

15  mortgage servicer is required to send a borrower written notice identifying the reasons for

16  denial, including (1) timing and instructions for requesting an appeal; (2) if applicable, reasons

17  for investor disallowance of the loan modification; (3) information related to net present value

18  calculation, if denial was based on this calculation; (4) if applicable, a finding of a prior failed

19  loan modification; and (5) a description of other foreclosure prevention alternatives for which

20  the borrower may be eligible. A mortgage servicer must provide a borrower at least 30 days

21  from the date of a written denial to appeal the denial and provide evidence that the mortgage

22  servicer's determination was in error.

23       37.    Plaintiff alleges that she was not formally declined by mail or phone. While

24  Defendants claim Plaintiff did not qualify for loan modification, they failed in their obligation

25  to provide the reason why. More specifically, Defendants did not notify Plaintiff that the

26  application had been denied, the reason why or that Plaintiff under law had 30 days to appeal

27  the decision before foreclosure proceedings could advance.

28

38. California Civil Code section 2923.55 provides the following: "a mortgage servicer shall send the following information in writing to the borrower...

          (B) A statement that the borrower may request the following:

          (i) A copy of the borrower's promissory note or other evidence of indebtedness.

          (ii) A copy of the borrower's deed of trust or mortgage.

          (iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

          (iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due."

39. Plaintiff has not received any of the documents listed in Cal. Civil Code section 2923.55 subsection (B), in violation of Cal. Civil Code section 2923.55, despite a request to furnish the aforementioned documents.

40. Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the potential loss of the Subject Property, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual consequential damages that will be proven on date of trial. Furthermore, Plaintiff has been harmed in that Plaintiff was unable to exercise her rights to reinstate the loan under Cal. Civil Code section 2924c, as well as exercise her right to secure other alternatives to foreclosure.

## SECOND CAUSE OF ACTION

### STATUTORY UNFAIR COMPETITION – CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.

(Against ALL Defendants)

41. Plaintiff hereby incorporates by this reference paragraphs 1 through 40, as though fully set forth herein.

- 9 -

42.     Defendants' conduct as alleged herein constitutes unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of California Business and Professions Code §17200 et seq.

43.     Specifically, Defendants are unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiff, in direct violation of California Civil Code foreclosure procedure statutes, including newly amended statutes implemented effective January 1, 2013 by way of AB 237 and SB 900.

44.     Upon information and belief, Defendants have pattern and practice of foreclosing on property of California homeowners without contacting them to explore options to avoid foreclosure as required by law. In fact, as was the case here, Defendants are purposefully precluding homeowner attempts to apply and qualify for any and all workout options.

45.     Upon information and belief, Defendants have pattern and practice of foreclosing on property of California homeowners without giving opportunity for, agreeing to or implementing a modification or workout as required by California Civil Code §2923.6 when loan payments are in default or default is reasonably foreseeable and anticipated recovery under the workout exceeds the anticipated recovery through foreclosure on a net present value basis.

46.     Plaintiff has additionally been damaged in the amount of foreclosure fees and costs already charged to and added to Plaintiff's loan, in an amount to be proven at trial.

47.     The fees and costs charged by Defendants were charged without any legal authority to do so and in direct violation of the statutory mandate of California Civil Code §2923.55 and §2923.6.

48.     Defendants must be required to disgorge any profit or gain that they obtained as a result of their wrongful conduct as herein alleged.

49.     Plaintiff is entitled to equitable relief in the form of an order requiring Defendants to disgorge all profits or gain they have obtained from Plaintiff or at the expense of Plaintiff and members of the general public by reason of their unlawful, unfair or fraudulent

1 | business act(s) and practice(s) and an injunction enjoining Defendants from continuing said acts

2 | or practices.

3

4 | ### THIRD CAUSE OF ACTION

5 | ### COMMON LAW UNFAIR COMPETITION

6 | (Against ALL Defendants)

7 | 50.    Plaintiff hereby incorporates by this reference paragraphs 1 through 49, as

8 | though fully set forth herein.

9 | 51.    Defendants' acts and practices as herein alleged constitute unfair competition

10 | pursuant to common law of the State of California.

11 | 52.    Defendants' conduct as herein described, has damaged and will continue to

12 | damage Plaintiff and has resulted in losses to Plaintiff and an illicit profit or gain to Defendants

13 | in an amount to be proved with particularity at the trial of this matter.

14 | 53.    By purposefully avoiding mandatory communication requirements and curtailing

15 | possible opportunities for Plaintiff to avoid foreclosure, Defendants prioritized gaining ground

16 | to proceed with the foreclosure rather than complying with California law. Plaintiff is entitled to

17 | equitable relief in the form of an order requiring Defendants to disgorge all profit or gain they

18 | have obtained from Plaintiff and members of the general public by reason of their wrongful

19 | conduct as herein alleged, and an injunction enjoining Defendants from continuing said acts or

20 | practices.

21

22 | ### FOURTH CAUSE OF ACTION

23 | ### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

24 | (Against ALL Defendants)

25 | 54.    Plaintiff hereby incorporates by this reference paragraphs 1 through 53, as

26 | though fully set forth herein.

27

28

- 11 -

55.     By virtue of Defendants acts and practices, primarily in failing to abide by their own guidelines, as well as state requirements, in offering or accepting Plaintiff's alternatives to foreclosure, Defendants have breached their covenant of good faith and fair dealing.

56.     As a proximate result of Defendants acts and practices, Plaintiff has been damaged in an amount to be proven at time of trial.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

### (Against ALL Defendants)

57.     Plaintiff hereby incorporates by this reference paragraphs 1 through 56, as though fully set forth herein.

58.     Plaintiff alleges Defendants were negligent in reviewing Plaintiff for foreclosure prevention assistance. Defendants continuously loss documents and gave Plaintiff false and untimely status updates.

59.     Defendants owed Plaintiff a duty of care in offering Plaintiff loan assistance.

60.     While a financial institution typically owes no duty of care to a borrower, once lenders voluntarily offer to undertake, and in fact do undertake, the task of reviewing a borrower's loan for a loan workout, it is undisputed that they must do so with ordinary care and in good faith, and they must not leave the borrower in a worse position than they found him/her before offering to undertake, and in fact undertaking, the task. *Valdez v. Taylor Auto. Co.* (1954) 129 Cal. App. 2d 810, 817; *Aim Ins. Co. v. Culcasi* (1991) 229 Cal. App. 3d 209, 217-18. Defendants did leave Plaintiff in a worse position.

61.     Defendants were vague in their explanations, or gave unjustified excuses. Plaintiff was left exposed to foreclosure as she continued to fall behind on her loan, rather than given the opportunity to correct her eligibility and thereby receive a modification or other assistance.

62.     The lack of proper assistance and communication by Defendants caused Plaintiff monetary loss, severe emotional stress at the loss Plaintiff's home, loss of home equity, and more.

63.     Plaintiff demands damages in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against all Defendants)

64.     Plaintiff hereby incorporates by this reference paragraphs 1 through 63, as though fully set forth herein.

65.     Plaintiff alleges Defendants negligently inflicted emotional distress upon her.

66. .    Defendants wrongfully pursued foreclosing on Plaintiff's home in violation of various California statues as mentioned above.

67.     Plaintiff has directly suffered serious emotional distress in response as foreclosure is a harrowing and highly emotional experience.

68.     Plaintiff demands an award of damages for all her distress suffered in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### FOR DECLARATORY RELIEF

(Against ALL Defendants)

69.     Plaintiff hereby incorporates by this reference paragraphs 1 through 68, as though fully set forth herein.

70.     An actual controversy has arisen and now exists between the parties to this complaint and their respecting rights and responsibilities.

71.     Plaintiff requests and is entitled to a judicial declaration and judgment of this Court that:

- 13 -

1    (A)    That Defendants failed to abide by their own guidelines in offering Plaintiff

2    application for a loan modification or other alternative in violation of Civil Code §2923.6 and

3    further violated numerous communication requirements as dictated by the California

4    Homeowners Bill of Rights.

5    (B)    That Defendants and each of them, failed to provide the required statutory

6    notifications and undertake the required courses of action as mandated under California's Civil

7    Code.

8    72.    Plaintiff has no adequate remedy at law for the injuries that have occurred and

9    are being threatened by the Defendants herein.

10    73.    Plaintiff has additionally been injured in that Plaintiff has incurred unlawful

11    foreclosure fees and expenses, which have been added to the amount of Plaintiff's loan.

12

13    **EIGTH CAUSE OF ACTION:**

14    **FOR INJUNCTIVE RELIEF**

15    (Against ALL Defendants)

16    74.    Under California law, a borrower may bring an action for injunctive relief to

17    enjoin a material violation of Civil Code section 2923.55, 2923.6, 2923.7, 2923.9, 2924.10, or

18    2924.11.  Any injunction shall remain in place and any trustee's sale shall be enjoined until the

19    court determines that the bank has corrected and remedied the violations giving rise to the

20    action for injunctive relief.  Civil Code 2924.12.

21    75.    Pursuant to California Civil Code section 2924.19 (a), any injunction shall

22    remain in place and any trustee's sale shall be enjoined until the court determines that the

23    mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the

24    violation or violations giving rise to the action for injunctive relief.

25    76.    Also under these laws, pursuant to California Civil Code section 2924.19 (h), a

26    court may award a prevailing borrower reasonable attorney's fees and costs in an action brought

27    pursuant to this section. Id. At subsection (g).  Additionally, a borrower shall be deemed to have

28

- 14 -

1   prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was

2   awarded damages pursuant to this section. Id at subsection (h).  Under the recently-enacted

3   **California Homeowners' Bill of Rights,** a mortgage servicer/bank may not record a notice of

4   default until it complies with numerous specific conditions set forth in the statute at 2924.18 and

5   further cannot continue foreclosure proceedings unless all rights of the borrower are considered

6   and give.

7

8          **WHEREFORE,** Plaintiff prays for judgment against this defendant as follows:

9          1.      A declaratory judgment and order of this Court that:

10         (A)     Defendants, and each of them, may not foreclose on the Property until they have

11   honored and proven that all statutory requirements stemming from and relating to Plaintiff's

12   options to avoid foreclosure have been met.

13         (B)     That Defendants failed to abide by their own guidelines in qualifying or

14   reviewing Plaintiff for a loan modification in violation of Civil Code §2923.6.

15         (C)     That Defendants and each of them, failed to provide the required statutory

16   notifications and undertake the required courses of action as mandated under California's Civil

17   Code.

18         2.      For a temporary restraining order, preliminary injunction and permanent

19   injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices

20   of foreclosing on property of California homeowners, including Plaintiff, without considering

21   her for within their guidelines, and when anticipated recovery through a modification or

22   workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

23         3.      For disgorgement of Defendants' illegal profits and gain, including but not

24   limited to all foreclosure fees and costs charged California homeowners, including Plaintiff.

25         4.      For an award of actual damages in an amount within the jurisdictional limits of

26   this Court to be proven at trial.

27         5.      For general damages, according to proof.

28

- 15 -

1     6.     For special damages, according to proof.

2     7.     For consequential damages, and incidental damages, according to proof.

3     8.     For an award of reasonable attorney's fees pursuant to agreement of the parties,

4   according to proof.

5     9.     For an award of interest, including prejudgment interest, as provided by law.

6     10.    For costs of suit; and

7     11.    For such other relief as the Court deems just and proper.

8

9   DATED: November 11, 2014                    KETTNER LAW CORPORATION

10

11                                      BY:    _____

12                                             MARC APPLBAUM
                                               Attorney for Plaintiff
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIDAVIT AND VERIFICATION
### (CCP § 2015.5)

STATE OF CALIFORNIA      )
                       )
COUNTY OF RIVERSIDE     )

I, CINDY J. NEUDORFF, Plaintiff in the above entitled action against Defendants, NATIONSTAR MORTGAGE, LLC; NBS DEFAULT SERVICES, LLC; and DOES 1 through 50, inclusive, have read the foregoing verified complaint and know the contents hereof

I certify that the same is true to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.

This lawsuit is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law, or by a non-frivolous argument for the extension, modification or reversal of existing law, or the establishment of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: November 11, 2014                 _____
                                  CINDY J. NEUDORFF

- 17 -

# EXHIBIT  B

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

NATIONSTAR MORTGAGE, LLC; NBS DEFAULT SERVICES,
LLC; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CINDY J. NEUDORFF

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 1 2 2014

R. Alessandro

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte e más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Riverside County Superior Court | CASE NUMBER:<br>*(Número del Caso):* **1410837 1** |
|---|---|

4050 Main Street
Riverside, CA 92501

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Marc Applbaum, 2150 W. Washington Street, Suite 104 San Diego, CA 92110 Tel: (619) 756-7300

| DATE:<br>*(Fecha)* | NOV 1 2 2014 | Clerk, by<br>*(Secretario)* | R. Alessandro | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

NOTICE OF DEPARTMENT ASSIGNMENT
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

NEUDORFF VS. NATIONSTAR MORTGAGE LLC

CASE NO. RIC1410837

This case is assigned to the Honorable Judge John W Vineyard in Department 07 for all purposes.

The  Case Management Conference is scheduled for 05/13/15 at  8:30 in
Department  07.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who
are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP section 170.6 shall be filed  in accordance with that section.

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than
five court days before the hearing. See California Rules of Court, rule 1.100.

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I
am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and
procedures used in connection with the mailing of correspondence.  Such correspondence is deposited
in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served
a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 11/12/14                              by: _____
                                           ,RHIANNEN K ALESSANDRO Deputy Clerk

CDACMC
1/28/14

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

KETTNER LAW CORP.
Marc Applbaum (SBN 222511)
2150 West Washington Street #104
San Diego, CA 92110
TELEPHONE NO: 619-756-7300        FAX NO: 888-809-4658
ATTORNEY FOR *(Name):* Cindy J. Neudorff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Riverside
  STREET ADDRESS: 4050 Main St.
  MAILING ADDRESS:
  CITY AND ZIP CODE: Riverside, CA 92501
  BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
Neudorff v. Nationstar Mortgage LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder | RIC 1410837 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | By Fax |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[ ] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[ ] punitive
4. Number of causes of action *(specify):*  8
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/11/14

Marc Applbaum
_____
(TYPE OR PRINT NAME)

▶ *(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; |
|---|---|---|
| Judicial Council of California | | Cal. Standards of Judicial Administration, std. 3.10 |
| CM-010 [Rev. July 1, 2007] | | *www.courtinfo.ca.gov* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| | |
|---|---|
| ☐ BANNING 135 N. Alessandro Rd., Banning, CA 92220 | ☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☐ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ HEMET 880 N. State St., Hemet, CA 92543 | ☒ RIVERSIDE 4050 Main St., Riverside, CA 92501 |
| ☐ MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | ☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591 |

RI-030

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address)
Marc Applbaum (SBN: 222511)
Kettner Law Corp.
2150 W. Washington St., Suite 104
San Diego, CA 92110
TELEPHONE NO: 619-756-7300   FAX NO. (Optional): 888-809-4568
E-MAIL ADDRESS (Optional): marc@kettnerlawcorp.com
ATTORNEY FOR (Name): Cindy J. Neudorff

PLAINTIFF/PETITIONER: Neudorff

DEFENDANT/RESPONDENT: Nationstar Mortgage LLC

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 12 2014

R. Alessandro

RIC NUMBER:
1410837

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒ The action arose in the zip code of: 92545 _____

☒ The action concerns real property located in the zip code of: 92545 _____

By Fax

☐ The Defendant resides in the zip code of: _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date 11/11/14 _____

Marc Applbaum
[TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION]

► _Marc Applbaum_ (SIGNATURE)

Approved for Optional Use
Riverside Superior Court
RI-030 [Rev. 08/15/13]

**CERTIFICATE OF COUNSEL**

Page 1 of 1
Local Rule 1.0015
riverside.courts.ca.gov/localforms/localforms.shtml

1    Kettner Law Corporation
     Marc Applbaum SBN: 222511
2    2150 W. Washington St., Suite 104
     San Diego, CA 92110
3    Tel.: (619) 756-7300
     Fax:  (888) 809-4658
4    marc@kettnerlawcorp.com

5    Attorney for Plaintiff,

6

7

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

                             COUNTY OF RIVERSIDE

     CINDY J. NEUDORFF                      Case No.   RIC   1410837

                                            NOTICE OF PENDENCY OF ACTION
                Plaintiff,                  [CCP § 405.20]

                v.

     NATIONSTAR MORTGAGE, LLC; NBS          By Fax
     DEFAULT SERVICES, LLC; and DOES 1
     through 50 inclusive,

                Defendants

         **NOTICE IS HEREBY GIVEN** that the above entitled action was filed in the above court on

     November 11, 2014 by CINDY J. NEUDORFF, plaintiff against NATIONSTAR MORTGAGE, LLC;

     NBS DEFAULT SERVICES, LLC; and DOES 1 through 50 inclusive, defendants. The action effects

26   title to real property and the validity of foreclosure actions taken by defendants in the complaint. The

27

28

specific real property is affected by the action is located in the County of Riverside, State of California, and described as follows:

## LEGAL DESCRIPTION

PARCEL 1:
LOT 14 OF TRACT 29129, IN THE CITY OF HEMET, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY A MAP ON FILE IN BOOK 383, PAGES 56 AND 57, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY EXCEPT THEREFROM ALL OIL, GAS MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY.

PARCEL 2:
NONEXCLUSIVE EASEMENTS FOR USE, INGRESS, EGRESS, ACCESS, REPAIR, DRAINAGE, ENCROACHMENT, SUPPORT OR OTHER PURPOSES, ALL AS DESCRIBED AND/OR DEPICTED IN THE "DECLARATION OF CONDITIONS, COVENANTS, AND RESTRICTIONS FOR SUNDANCE AT STONEY MOUNTAIN RANCH (TRACT 29129)" RECORDED ON OCTOBER 11, 2005 AS INSTRUMENT NO. 2005-0837650 IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AS SAME MAY BE AMENDED, MODIFIED, AND/OR RE-RECORDED, FROM TIME TO TIME ("DECLARATION").

PARCEL 3:
A NONEXCLUSIVE EASEMENT APPURTENANT TO SUCH LOT FOR INGRESS, EGRESS, ACCESS, USE, AND ENJOYMENT ON, OVER AND ACROSS THE COMMON AREA, IF ANY, WITHIN THE PROJECT, AS MORE PARTICULARLY DESCRIBED AND/OR DEPICTED IN THE DECLARATION.

APN: 448-480-014-9

DATED: November 11, 2014          KETTNER LAW CORPORATION



                                  BY:  _____
                                       MARC APPLBAUM
                                       Attorney for Plaintiffs

---

NEUDORFF v. NATIONSTAR MORTGAGE LLC - PLAINTIFF'S NOTICE OF PENDENCY OF ACTION



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
www.riverside.courts.ca.gov
Self-represented parties: http://riverside.courts.ca.gov/selfhelp/self-help.shtml

---

**ALTERNATIVE DISPUTE RESOLUTION (ADR) –**
*INFORMATION PACKAGE*
(California Rules of Court, Rule 3.221; Local Rule, Title 3, Division 2)

\*\*\* **THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE
ON EACH PARTY WITH THE COMPLAINT.** \*\*\*

---

## What is ADR?

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration and settlement conferences.

## Advantages of ADR:

- Faster: ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive: Parties can save court costs and attorneys' and witness fees.
- More control: Parties choose their ADR process and provider.
- Less stressful: ADR is done informally in private offices, not public courtrooms.

## Disadvantages of ADR:

- No public trial: Parties do not get a decision by a judge or jury.
- Costs: Parties may have to pay for both ADR and litigation.

## Main Types of ADR:

**Mediation:** In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone. If the parties do not wish to settle the case, they go to trial.

## Mediation may be appropriate when the parties:

- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

## Mediation is not appropriate when the parties:

- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial. In "non-binding" arbitration, any party can request a trial after the arbitrator's decision. The court's mandatory Judicial Arbitration program is non-binding.

Adopted for Mandatory Use
Riverside Superior Court

<u>Arbitration may be appropriate when the parties:</u>
- ☒ want to avoid trial, but still want a neutral person to decide the outcome of the case.

<u>Arbitration is not appropriate when the parties:</u>
- ☒ do not want to risk going through both arbitration and trial (Judicial Arbitration)
- ☒ do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:**   Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial.  Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

<u>RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS</u>
ADR Information and forms are posted on the ADR website: http://riverside.courts.ca.gov/adr/adr.shtml

<u>General Policy:</u>
Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial.  (Local Rule 3200)

<u>Court-Ordered ADR:</u>
Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

<u>Private ADR (for cases not ordered to arbitration or mediation):</u>
Parties schedule and pay for their ADR process without Court involvement.  Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:
1. Discuss ADR with all parties at least 30 days before the CMC.  Discuss:
   - ☒ Your preferences for mediation or arbitration.
   - ☒ Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.

(Local Rule 3218)

RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:
- ☒ The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation).  See http://adr.riverside.courts.ca.gov/adr/civil/panelist.php or ask for the list in the civil clerk's office, attorney window.
- ☒ Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act):
  Dispute Resolution Service (DRS) Riverside County Bar Association:  (951) 682-1015
  Dispute Resolution Center, Community Action Partnership (CAP):  (951) 955-4900

NEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

COURT USE ONLY

TELEPHONE NO.:     FAX NO. *(Optional):*

ADDRESS *(Optional):*

ORNEY FOR *(Name):*

RIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Banning - 135 N. Alessandro Road, Banning, CA 92220
Hemet - 880 N. State Street, Hemet, CA 92543
dio - 46-200 Oasis Street, Indio, CA 92201
Riverside - 4050 Main Street, Riverside, CA 92501
emecula - 41002 County Center Drive, Bldg. C - Suite 100, Temecula, CA 92591

FF(S):

CASE NUMBER:

ANT(S):

IPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)
(CRC 3.2221; Local Rule, Title 3, Division 2)

CASE MANAGEMENT CONFERENCE DATE(S):

rdered ADR:

for Court-Ordered Mediation or Judicial Arbitration will be determined at the Case Management Conference. If
the parties agree to participate in:

| Mediation      [ ] Judicial Arbitration (non-binding)

ADR:

e is not eligible for Court-Ordered Mediation or Judicial Arbitration, the parties agree to participate in the following
cess, which they will arrange and pay for without court involvement:

Mediation          [ ] Judicial Arbitration (non-binding)
Binding Arbitration   [ ] Other (describe):_____

date to complete ADR: _____

THIS FORM ALONG WITH THE CASE MANAGEMENT STATEMENT.

E OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
tiff [ ] Defendant

E OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
tiff [ ] Defendant

E OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
tiff [ ] Defendant

E OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
tiff [ ] Defendant

tional signature(s) attached

Page 3 of 3

ndatory Use
for Court

ALTERNATIVE DISPUTE RESOLUTION (ADR)

Neudorff v. Nationstar Mortgage LLC et. al.
Superior Court of California, County of Riverside
Case No. RIC1410837

### DECLARATION OF SERVICE

I, the undersigned, declare: I am, and was at the time of service of the papers herein refereed to, over the age of 18 years old, and not a party to this action. My business address is 2150 W. Washington St., Suite 104, San Diego, CA 92110.

On November 17, 2014, I served the following document:

**SUMMONS, CIVIL CASE COVER SHEET, COMPLAINT, NOTICE OF PENDENCY OF ACTION, NOTICE OF CASE MANAGEMENT CONFERENCE, ADR PACKET**

on the parties in this action addressed as follows:

Nationstar Mortgage LLC
CSC- Lawyers Incorporating Service
2710 Gateway Oaks Dr., Ste 150N
Sacramento, CA 95833

__X__ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or portage meter date is more than one day after date of deposit for mailing in affidavit.

_____ **BY CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed as indicated above via certified mail, return receipt requested.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed this 17th day of November, 2014, at San Diego, California.

_____
ERIN MACLEOD

1

DECLARATION OF SERVICE

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kettner Law Corp<br>Marc Applbaum (SBN 222511)<br>2150 W. Washington St., Suite 104<br>San Diego, CA 92110<br>　TELEPHONE NO.: 619-756-7300　　FAX NO. *(Optional):*<br>　E-MAIL ADDRESS *(Optional):* marc@kettnerlawcorp.com<br>　ATTORNEY FOR *(Name):* Cindy J. Neudorff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
　STREET ADDRESS: 4050 Main Street
　MAILING ADDRESS:
　CITY AND ZIP CODE: Riverside, CA 92501
　BRANCH NAME: Riverside Historic Courthouse

PLAINTIFF/PETITIONER: Neudorff

DEFENDANT/RESPONDENT: Nationstar Mortgage LLC

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RIC1410837 |
|---|---|

TO *(insert name of party being served):* Nationstar Mortgage LLC

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 11/17/2014

Erin MacLeod
　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　　(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
　　Civil Case Cover Sheet, Notice of Pendency of Action, Notice of Case Management Conference, ADR packet / Stipulation

*(To be completed by recipient):*

Date this form is signed:

_____　　　　_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,　　(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)　　　　　ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kettner Law Corp<br>Marc Applbaum (SBN 222511)<br>2150 W. Washington St., Suite 104<br>San Diego, CA 92110<br>TELEPHONE NO.: 619-756-7300     FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* marc@kettnerlawcorp.com<br>ATTORNEY FOR *(Name):* Cindy J. Neudorff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Historic Courthouse

PLAINTIFF/PETITIONER: Neudorff

DEFENDANT/RESPONDENT: Nationstar Mortgage LLC

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RIC1410837 |
|---|---|

TO *(insert name of party being served):* Nationstar Mortgage LLC

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 11/17/2014

Erin MacLeod
_____
(TYPE OR PRINT NAME)                                    ►  _____
                                                              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑  A copy of the summons and of the complaint.
2. ☑  Other *(specify):*
      Civil Case Cover Sheet, Notice of Pendency of Action, Notice of Case Management Conference,
      ADR packet / Stipulation

*(To be completed by recipient):*

Date this form is signed:

_____                    ►  _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# EXHIBIT  C



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 01 2014

Jullette Jones

1   MICHAEL M. LE, ESQ., SBN 255056
    MICHAEL R. GONZALES., SBN 261302
2   STEPHEN T. HICKLIN, ESQ. SBN 136568
    BUCKELY MADOLE, P.C.
3   301 E. Ocean Drive, Suite# 1720
    Long Beach, California 90802
4   Telephone:   (562) 983-5363
    Facsimile:   (562) 983-5363
5   Email:       Michael.Le@BuckleyMadole.com

6   Attorney for Defendant,
7   NBS DEFAULT SERVICES, LLC

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF RIVERSIDE

10

11

12  CINDY J. NEUDORFF                    CASE NO.: RIC1410837
                  Plaintiffs,

13  vs.                                  DECLARATION OF NON-MONETARY
                                         STATUS TO PLAINTIFF'S
14  NBS DEFAULT SERVICES, LLC            COMPLAINT BY FORECLOSURE
                                         TRUSTEE PURSUANT TO CIVIL
15                                       CODE SECTION 2924l

16                Defendants.

17

18

19  I, LES POPPITT, declare:

20

21      1.  I have personal knowledge of the facts herein, and if called as a witness, could competently

22          testify thereto.

23      2.  I oversee the west coast operations of Defendant, NBS DEFAULT SERVICES, LLC

24          ("NBS").

25      3.  The subject matter of this litigation is a Deed of Trust under which NBS is the substitute

26          trustee.   The Deed of Trust was recorded January 27, 2006 with the Riverside County

27

28

    DECLARATION OF NON-MONETARY STATUS BY FORECLOSURE TRUSTEE
              PURSUANT TO CIVIL CODE SECTION 2924l
                                1

Recorder's Office as 2006-0064810. NBS has not been named as a Defendant due to any acts or omissions on its part in the performance of its duties as trustee.

4. NBS believes, based on the pleadings, that it has been named in this proceed solely in its capacity as trustee or agent therefor under the Deed of Trust. NBS maintains a reasonable belief that it has not been named due to any acts of omissions on its part in the performance of its duties as trustee or agent therefor. The basis for that belief is that the acts of NBS in commencing and proceeding with the foreclosure proceedings are privileged under Civil Code § 2924(d) and Civil Code § 47 and it has engaged in no actionable conduct of any kind.

5. NBS agrees to be bound by whatever non-monetary order or judgment is issued by the Court regarding the subject Deed of Trust.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 25, 2014, at Long Beach, CA

_____
LES POPPITT, Declarant

**DECLARATION OF NON-MONETARY STATUS BY FORECLOSURE TRUSTEE**
**PURSUANT TO <u>CIVIL CODE</u> SECTION 2924l**

2

**PROOF OF SERVICE**

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 301 E. Ocean Blvd., #1720, Long Beach, California 90802.
  On November 25, 2014, I served the foregoing documents entitled Declaration of Non-Monetary Status upon the interested parties:

Marc Applbaum, Esq.
Kettner Law Corporation
2150 West Washington Street, #104
San Diego, CA 92110


In the following manner:

[x] (BY U.S. MAIL) I placed a true and correct copy of said document in a sealed envelope with postage thereon fully prepaid, to be deposited in the U.S. Mail at Long Beach, California.  I am "readily familiar" with my firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[ ] (BY OVERNIGHT MAIL) I placed such envelope(s) addressed as shown above for collection and delivery by overnight courier with delivery fees paid or provided for in accordance of this firm's practice. I am readily familiar with this firm's practice for processing correspondence for delivery the following day by overnight courier.

[ ] (BY FACSIMILE) I caused such document to be telefaxed to the addressee(s) and number(s) shown above, where in such telefax is transmitted that same day in the ordinary course of business.

[ ] (BY ELECTRONIC MEANS) to electronic mail address (es)

[ ] (BY PERSONAL SERVICE) I caused such envelope(s) to be hand-delivered to the addressee(s) shown above.  A proof of service signed by the authorized courier will be filled forthwith.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
  Executed on November 25, 2014 at Long Beach, California.

_____
   Kyle Dillon

# EXHIBIT  D

*Chicago Title*

Recording Requested By:
CHICAGO TITLE
560 E HOSPITALITY LANE , SAN BERNARDINO,CA 92406

Return To:
AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

DOC # 2006-0064810
01/27/2006 08:00A Fee:69.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Prepared By:
SERGIO GUERRERO
LEHMAN BROTHERS BANK
18200 VON KARMAN, #700
IRVINE, CA 92612

| | M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 21 | | | | | | DA |
| | A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

MIN   100025440002956339

69

T
DA

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   January 13, 2006   together with all Riders to this document.

(B) "Borrower" is   CINDY J NEUDORFF
, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower's address is   5191 INGLESTONE DRIVE
HEMET, CALIFORNIA 92545    . Borrower is the trustor under this Security Instrument.

(C) "Lender" is   LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a
organized and existing under the laws of   UNITED STATES

0037383510
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

VMP -6A(CA) (0207)
Page 1 of 16                                    Initials:

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is   18200 VON KARMAN, #250 , IRVINE, CA 92612

(D) "Trustee" is   CHICAGO TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   January 13, 2006
The Note states that Borrower owes Lender
   THREE HUNDRED EIGHT THOUSAND & 00/100                                    Dollars
(U.S. $   308,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   February 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [X] Other(s) [specify]  PREPAY/ Addendum to ARM Rider Interest Only Addendum

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

100025440002956339
0037383510
-6A(CA) (0207)                          Page 2 of 15          Initials:              Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                                     of   Riverside                             :
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LOT 14 OF TRACT 29129,IN THE CITY OF HEMET,COUNTY OF RIVERSIDE,STATE OF
CALIFORNIA,AS SHOWN BY MAP ON FILE IN BOOK 383,PAGES 56 AND 57 OF MAPS,IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number:   441-780-004-8                              which currently has the address of
5191 INGLESTONE DRIVE                                                                   [Street]
HEMET                                             [City] , California     92545     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

100025440002956339
0037383510
-6A(CA) (0207)                               Page 3 of 15         Initials: CW         Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

100025440002956339
0037383510
-6A(CA) (0207)                          Page 7 of 15                   Initials: _____       Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

100025440002956339
0037383510

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

100025440002956339
0037383510

-6A(CA) (0207)          Page 9 of 16          Initials: _____          Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

100025440002956339
0037383510
-6A(CA) (0207)

Page 10 of 15

Initials: 

Form 3005   1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

100025440002956339
0037383510

Initials: [signature]

-6A(CA) (0207)          Page 13 of 15          Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Cindy J Neudorff*          _____ (Seal)
                                          CINDY J NEUDORFF                        -Borrower


_____          _____ (Seal)
                                                                        -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                               -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                               -Borrower


_____ (Seal)         _____ (Seal)
                -Borrower                                               -Borrower


100025440002956339
0037383510
VMP ®-6A(CA) (0207)               Page 14 of 15               Form 3005   1/01

State of California
County of Riverside                                    } ss.

On   1·20·06         before me,  K. Peters, a notary public

          Cindy J. Neudorff                          personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                              K. Peters                    (Seal)

K. PETERS
Commission # 1595142
Notary Public · California
Riverside County
My Comm. Expires Jul 15, 2009

100025440002956339
0037383510
-6A(CA)  (0207)              Page 15 of 15        Initials:            Form 3005  1/01

100025440002956339
0037383510

# ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 13th day of January, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

5191 INGLESTONE DRIVE, HEMET, CALIFORNIA 92545

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 6.375 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of February , 2011 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 25 HUNDREDTHS percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL ) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402)   Form 3138 1/01

Page 1 of 3          Initials:

VMP Mortgage Solutions, Inc.
(800)521-7291

100025440002956339
0037383510

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.375** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO**

( **2.000**                                          percentage points

    **6**                          %) from the rate of interest I have been paying for the preceding

months. My interest rate will never be greater than **12.375** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _____

**VMP®-838R** (0402)                    Page 2 of 3                    Form 3138 1/01

100025440002956339
0037383510

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
CINDY J NEUDORFF        -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                      -Borrower

VMP·838R (0402)                Page 3 of 3                Form 3138 1/01

100025440002956339
0037383510

# PREPAYMENT RIDER
## *(Multi-state)*

This Prepayment Rider is made this 13th day of      January, 2006      and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to      LEHMAN BROTHERS BANK, FSB (the "Lender") of the same date and covering the property described in the Security Instrument and located at   5191 INGLESTONE DRIVE HEMET, CALIFORNIA 92545 (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the      3   -year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first      0year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)     _____ (Seal)
Borrower    CINDY J NEUDORFF                Borrower

_____ (Seal)     _____ (Seal)
Borrower                            Borrower

60382
ALSB2M1

11/15/99

100025440002956339
0037383510

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made **January 13 , 2006** and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**5191 INGLESTONE DRIVE , HEMET , CALIFORNIA 92545**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.375**% or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.375** %. My interest rate will never be less than **2.250** %.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____
Date

_____                    _____
Date                                              CINDY J NEUDORFF

_____                    _____
Date

_____                    _____
Date

DIS0221
1202  LIBOR Addendum to Rider                                                   1/01

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 0037383510

PROPERTY ADDRESS: 5191 INGLESTONE DRIVE
HEMET, CALIFORNIA 92545

THIS ADDENDUM is made this 13th day of January , 2006          and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 18200 VON KARMAN, #250, IRVINE, CA 92612
(the Lender).
THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES
       (C)   Calculation of Changes
             Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.25          percentage point(s) ( 2.25 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

             During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated:  1-20-06

CINDY J NEUDORFF

DIS0291                                 page 1 of 1                                 1/01
Form 603F

# EXHIBIT E

DOC # 2014-0404516
10/24/2014 11:15 AM Fees: $28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY
LPS Default Title & Closing
3220 El Camino Real
Irvine, CA 92602

AND WHEN RECORDED MAIL TO:
NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: YSEGURA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 9448-5725   TSG Order No.: 140111308-CA-MAI A.P.N.: 448-480-014-9

## NOTICE OF TRUSTEE'S SALE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

出售通知

注：本文件包含一个信息摘要

매각 공고
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

AVISO DE VENTA
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

PABATID NG PAGBEBENTA
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to
Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 01/13/2006.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale
contained in that certain Deed of Trust Recorded 01/27/2006 as Document No.: 2006-0064810, of
Official Records in the office of the Recorder of Riverside County, California, executed by: CINDY J
NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor,  WILL
SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable in full at time of sale by
cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit
union, or a check drawn by a state or federal savings and loan association, savings association, or
savings bank specified in section 5102 of the Financial Code and authorized to do business in this
state).    All right, title and interest conveyed to and now held by it under said Deed of Trust in the
property situated in said County and state, and as more fully described in the above referenced Deed
of Trust.

DOC #2014-0404516  Page 2 of 2 10/24/2014 11:15 AM

**Sale Date & Time: 11/17/2014 at 09:00 AM**
**Sale Location: In front of the Corona Civic Center, 849 W. Sixth Street, Corona, CA 92882**

The street address and other common designation, if any, of the real property described above is purported to be: 5191 INGLESTONE DRIVE, HEMET, CA 92545

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$345,404.12 (Estimated).**   Accrued interest and additional advances, if any, will increase this figure prior to sale.   It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call, (714)730-2727 for information regarding the trustee's sale or visit this Internet Web site, www.servicelinkASAP.com, for information regarding the sale of this property, using the file number assigned to this case, T.S.# 9448-5725. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802
800-766-7751
For Trustee Sale Information Log On To: www.servicelinkASAP.com or Call: (714)730-2727.

**NBS Default Services, LLC, Nicole Rodriguez, Foreclosure Associate**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.