**MCGUIREWOODS LLP**
Adam F. Summerfield (SBN #259842)
Carlo L. Rodes (SBN #268170)
1800 Century Park East
8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendant Nationstar Mortgage LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CINDY J. NEUDORFF<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC;<br>NBS DEFAULT SERVICES, LLC; and<br>DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 5:14-cv-02608-FMO-SP<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO DISMISS**<br><br>**[Diversity Jurisdiction – 28 U.S.C. § 1332]** |

Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Defendant Nationstar Mortgage LLC requests that the Court take judicial notice of the following document in support of its motion to dismiss Plaintiffs' Complaint:

1.     Promissory Note, executed on January 13, 2006 by Cindy Neudorff, evidencing a loan from Lehman Brothers Bank, FSB in the amount of $308,000.00; a true and correct copy is attached as **Exhibit A**.

2.     Deed of Trust, recorded on January 27, 2006 in the Official Records of the County of Riverside as Document No. 2006-0064810; a true and correct copy is attached as **Exhibit B**.

3.     Notice of Default, recorded on December 19, 2008 in the Official

Records of the County of Riverside as Document No. 2008-0664896; a true and correct copy is attached as **Exhibit C**.

4.      Notice of Trustee's Sale, recorded on March 23, 2009 in the Official Records of the County of Riverside as Document No. 2009-0139870; a true and correct copy is attached as **Exhibit D**.

5.      Notice of Rescission of Notice of Default and Election to Sell, recorded on April 29, 2010 in the Official Records of the County of Riverside as Document No. 2010-0196195; a true and correct copy is attached as **Exhibit E**.

6.      Corporate Assignment of Deed of Trust, recorded on June 4, 2013 in the Official Records of the County of Riverside as Document No. 2013-0266012; a true and correct copy is attached as **Exhibit F**.

7.      Notice of Default, recorded on July 21, 2014 in the Official Records of the County of Riverside as Document No. 2014-0269393; a true and correct copy is attached as **Exhibit G**.

8.      Notice of Trustee's Sale, recorded on October 24, 2014 in the Official Records of the County of Riverside as document No. 2014-040516; a true and correct copy is attached as **Exhibit H**.

Judicial notice of Exhibit A is appropriate because this document is a true and correct copy of a document which is attached to, referred to in, and/or forms the basis of the allegations in Plaintiff's complaint. *See Marder v.* Lopez, 450 F.3d 445, 448 (9th Cir. 2006); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (documents not attached to complaint may be incorporated by reference if the plaintiff has referred to the document in the complaint or if the document forms the basis for the plaintiff's claims).

Judicial notice of Exhibits B-H is appropriate because these documents are true and correct copies of official public records of the County of Riverside, California, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

201(b); *Gamboa v. Tr. Corps & Cent. Mortg. Loan Svcg. Co.*, 2009 U.S. Dist.
LEXIS 19613, at *4-10 (N.D. Cal. Mar. 12, 2009) (Court took judicial notice of
recorded documents related to foreclosure sale, including grant deed and deed of
trust.  "These documents are also part of the public record and are easily verifiable.
*See* Fed. R. Evid. 201(b); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir.
1992) (holding that notice may be taken of facts capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be
questioned)"); *Velasquez v. GMAC Mortgage Corp.*, 605 F.Supp. 2d 1049, 1058
(C.D. Cal. 2008).

DATED: January 5, 2015                Respectfully submitted,

                                      MCGUIREWOODS LLP


                                      By:  ___/s/ Adam F. Summerfield___
                                              Adam F. Summerfield
                                           Attorneys for Defendant
                                           Nationstar Mortgage LLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I, Adam F. Summerfield, certify that on January 5, 2015, the foregoing document entitled **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO DISMISS** was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" ("NEF") as service through CM/ECF to registered e-mail addresses of parties of record in the case.

_/s/ Adam F. Summerfield_
Adam F. Summerfield

# EXHIBIT  A

100025440002956339
0037383510

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| January 13, 2006 | TEMECULA | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

5191 INGLESTONE DRIVE, HEMET, CALIFORNIA 92545
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 308,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on March 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at LEHMAN BROTHERS BANK, FSB
18200 VON KARMAN, #250, IRVINE, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,921.52 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL* ) - Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210)        Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4        Initials:

100025440002956339
0037383510

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of **February, 2011**                    , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25 HUNDREDTHS**                    percentage points ( **2.250**      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **12.375**      % or less than **2.250**      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO**                    percentage point(s) ( **2.000**      %) from the rate of interest I have been paying for the preceding **6**      months. My interest rate will never be greater than **12.375**      %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

~~I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.~~

~~I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.~~

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

100025440002956339
0037383510

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Initials: 

10002544002956339
0037383510

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CINDY J NEUDORFF                        -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

*[Sign Original Only]*

0037383510

**INTEREST-ONLY ADDENDUM
TO ADJUSTABLE RATE PROMISSORY NOTE**

LOAN NUMBER: 0037383510

PROPERTY ADDRESS:

5191 INGLESTONE DRIVE, HEMET, CALIFORNIA 92545

**THIS ADDENDUM** is made this 13th day of January                    , 2006   , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to LEHMAN BROTHERS BANK, FSB
(the Lender).

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

3.    **PAYMENTS**

(A)  **Time and Place of Payments**

I will pay interest by making payments every month for the first    120    payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next    240    payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly  payments  on  the  first  day  of  each month beginning on March 1 , 2006                    .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on    February 1, 2036                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at
18200 VON KARMAN, #250, IRVINE, CA 92612
or at a different place if required by the Note Holder.

(B)  **Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $   1,636.25   . This payment amount is based on the original principal balance of the Note.  This payment amount may change.

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND 25 HUNDREDTHS                        percentage point(s) (   2.250  %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.00     % of my overdue payment of interest during the Interest-Only Period,   5.00   % of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

Dated:  January 13, 2006

_____
Borrower  CINDY J NEUDORFF

_____
Borrower

0027382510

### PREPAYMENT NOTE ADDENDUM
*(Multi-State)*

This Prepayment Note Addendum is made this 13th day of January, 2006 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to

LEHMAN BROTHERS BANK, FSB (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at

5191 INGLESTONE DRIVE

HEMET, CALIFORNIA 92545
(the "Property").

THIS ADDENDUM supersedes the section of the Note entitled "BORROWER'S RIGHT TO PREPAY".

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "full Prepayment" is the Prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made the monthly payments due under the Note.

If, within the 3 -year period beginning with the date I execute the Note (the "Penalty Period"), I make a full Prepayment, or partial Prepayment in any twelve (12)-month period that exceeds 20% of the original Principal loan amount, I will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment. The Prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original Principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the Prepayment, unless otherwise prohibited by applicable law or regulation. No Prepayment charge will be assessed for any Prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0 year(s) of the term of the Note, no Prepayment penalty will be assessed. In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand

All other provisions of the Note are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**

Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____(Seal)          _____(Seal)
CINDY J NEUDORFF

_____(Seal)          _____(Seal)

0037383510

## ADDENDUM TO NOTE

This addendum is made   **January 13 , 2006**   and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**5191 INGLESTONE DRIVE , HEMET , CALIFORNIA 92545**

### AMENDED PROVISIONS
In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**Limits on Interest Rate Changes**
· The interest rate I am required to pay at the first Change Date will not be greater than   **12.375** % or less than   **2.250**%.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   **TWO**   percentage point(s) (   **2.000** %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than   **12.375**   %.  My interest rate will never be less than   **2.250**   %.

### UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

| | |
|---|---|
| Witness | |
| | _Cindy J Neudorff_ |
| Date | **CINDY J NEUDORFF** |
| Date | |
| Date | |
| Date | |

D1S0211
1201  LIBOR Addendum to Note

1/01

# EXHIBIT B

*Chicago Title*

Recording Requested By:
CHICAGO TITLE
560 E HOSPITALITY LANE , SAN BERNARDINO,CA 92406

Return To:
AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

DOC # 2006-0064810
01/27/2006 08:00A Fee:69.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Prepared By:
SERGIO GUERRERO
LEHMAN BROTHERS BANK
18200 VON KARMAN, #700
IRVINE, CA 92612

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   | 21   |      |     |      |       |     |       |
| A | R | L |      |      |     | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN   100025440002956339

69

T
DA

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   January 13, 2006
together with all Riders to this document.

(B) "Borrower" is   CINDY J NEUDORFF
, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower's address is   5191 INGLESTONE DRIVE
HEMET, CALIFORNIA 92545
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is   LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a
organized and existing under the laws of   UNITED STATES

0037383510
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

VMP -6A(CA) (0207)

Page 1 of 15          Initials:  

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is   18200 VON KARMAN, #250 , IRVINE, CA 92612

(D) "Trustee" is   CHICAGO TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   January 13, 2006
The Note states that Borrower owes Lender
    THREE HUNDRED EIGHT THOUSAND & 00/100                                                Dollars
(U.S. $    308,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   February 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] PREPAY/ |

Addendum to ARM Rider
Interest Only Addendum

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

100025440002956339
0037383510
VMP®-6A(CA) (0207)                      Page 2 of 15                   Initials:                Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Riverside :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 14 OF TRACT 29129,IN THE CITY OF HEMET,COUNTY OF RIVERSIDE,STATE OF CALIFORNIA,AS SHOWN BY MAP ON FILE IN BOOK 383,PAGES 56 AND 57 OF MAPS,IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number:  441-780-004-8            which currently has the address of
5191 INGLESTONE DRIVE                                               [Street]
HEMET                                      [City], California   92545   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

100025440002956339
0037383510
VMP -6A(CA) (0207)                         Page 3 of 15          Initials: ___         Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

1000254400002956339
0037383510
VMP®-6A(CA) (0207)

Page 4 of 16

Initials: [handwritten]

Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

100025440002956339
0037383510

VMP®-6A(CA) (0207)          Page 6 of 15          Initials: [signature]          Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

10002544000295 6339
0037383510
6A(CA) (0207)

Page 8 of 16

Initials: [signature]

Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

100025440002956339
0037383510

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

100025440002956339
0037383510
-6A(CA) (0207)                    Page 10 of 15          Initials:          Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

10002544000295 6339
0037383510

Initials: ___

6A(CA) (0207)          Page 13 of 15          Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                 CINDY J NEUDORFF                -Borrower


_____                    _____ (Seal)
                                                                                 -Borrower


_____ (Seal)             _____ (Seal)
                            -Borrower                                            -Borrower


_____ (Seal)             _____ (Seal)
                            -Borrower                                            -Borrower


_____ (Seal)             _____ (Seal)
                            -Borrower                                            -Borrower


100025440002956339
0037383510
VMP® -6A(CA) (0207)                  Page 14 of 15                  Form 3005   1/01

State of California
County of Riverside                              } ss.

On   1·20·06        before me,  K. Peters, a notary Public
            Cindy J. Neudorff                    personally appeared

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                    K. Peters                    (Seal)

K. PETERS
Commission # 1595142
Notary Public - California
Riverside County
My Comm. Expires Jul 15, 2009

100025440002956339
0037383510
-6A(CA)  (0207)                    Page 16 of 16        Initials:            Form 3005  1/01

100025440002956339
0037383510

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 13th day of January, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

5191 INGLESTONE DRIVE, HEMET, CALIFORNIA 92545

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 6.375 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of February, 2011 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 25 HUNDREDTHS percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL ) - Single Family - Fannie Mae Uniform Instrument

VMP-838R (0402)   Form 3138 1/01

Page 1 of 3        Initials: [initials]

VMP Mortgage Solutions, Inc.
(800)521-7291



100025440002956339
0037383510

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.375** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.375** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _CN_

VMP®-838R (0402)                  Page 2 of 3                  Form 3138 1/01

100025440002956339
0037383510

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Cindy J Neudorff_ (Seal)
CINDY J NEUDORFF          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

VMP-838R (0402)                Page 3 of 3                Form 3138 1/01

100025440002956339
0037383510

# PREPAYMENT RIDER
### *(Multi-state)*

This Prepayment Rider is made this 13th day of        January, 2006        and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to        LEHMAN BROTHERS BANK, FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at   5191 INGLESTONE DRIVE HEMET, CALIFORNIA 92545
(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the      3   -year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first        0 year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Cindy J Neudorff_ (Seal)                                    _____ (Seal)
Borrower   CINDY J NEUDORFF                                  Borrower

_____ (Seal)                       _____ (Seal)
Borrower                                                     Borrower

603B2                              page 1 of 1                              11/15/99
ALSB2M1

100025440002956339
0037383510

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made   **January 13 , 2006**                      and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**5191 INGLESTONE DRIVE , HEMET , CALIFORNIA 92545**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than   **12.375** % or less than **2.250** %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO**                  percentage point(s) ( **2.000**        %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than           **12.375**     %. My interest rate will never be less than     **2.250**     %.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

_____
Date

_____
Date

_____
Date

_____
Date

_____
CINDY J NEUDORFF

DIS0221
1202  LIBOR Addendum to Rider                                                    1/01

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 0037383510

PROPERTY ADDRESS: 5191 INGLESTONE DRIVE
HEMET, CALIFORNIA 92545

THIS ADDENDUM is made this 13th day of January , 2006          and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 18200 VON KARMAN, #250, IRVINE, CA 92612
(the Lender).
THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

### 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
####    (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.25          percentage point(s) ( 2.25 %) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated: 1-20-06

CINDY J. NEUDORFF

_____

_____

_____

# EXHIBIT  C

18Hm

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



DOC # 2008-0664896
12/19/2008 08:00A Fee:14.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| | | | | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | | CTY | UNI |

 

TS No.: CA-08-225082-CL                    Loan No.: 0037383510

## IMPORTANT NOTICE
## <u>NOTICE OF DEFAULT AND ELECTION TO SELL</u>
## <u>UNDER DEED OF TRUST</u>

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$9,472.40** as of 12/18/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Aurora Loan Services**
**C/O Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

TS No.: CA-08-225082-CL
Loan No.: 0037383510
**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/13/2006, executed by CINDY J NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK, as beneficiary, recorded 1/27/2006, as Instrument No. 2006-0064810, in Book xxx, Page xxx of Official Records in the Office of the Recorder of RIVERSIDE County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $308,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2935.5.

Dated: 12/18/2008                      **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
                                       BY: LSI Title Company

                                       _Tamlasaman_

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT  D

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

080150714

TS # CA-08-225082-CL          Loan # 0037383510

DOC # 2009-0139870
03/23/2009 08:00A Fee:15.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   |      |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      | T:  |      | CTY  | UNI |      |

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/13/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **CINDY J NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Recorded:        1/27/2006 as Instrument No. 2006-0064810 in book xxx, page xxx of Official Records in the office of the Recorder of RIVERSIDE County, California;

Date of Sale:    **4/9/2009 at 10:00 AM**
Place of Sale:   **At the Main Street entrance to the County Courthouse, 4050 Main Street, Riverside, CA.**
Amount of unpaid balance and other charges: **$320,855.82**
The purported property address is:     **5191 INGLESTONE DR**
                                       **HEMET, CA 92545**

Assessors Parcel No. 448-480-014-9

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

Date: 3/20/2009          Quality Loan Service Corp.
                         2141 5th Avenue
                         San Diego, CA 92101
                         619-645-7711 For NON SALE information only
                         Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
                         Reinstatement Line: 619-645-7711

                         _____
                         Quality Loan Service Corp. by: Nicole Fuentes, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT  E

DOC # 2010-0196195
04/29/2010 08:00A Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS # CA-08-225082-CL
Order # 080150714-CA-DCI

| S, | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|----|---|---|------|------|----|----|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | CTY | UNI | |

## Rescission of Notice of Default and Election to Sell
## Under Deed of Trust

**NOTICE IS HEREBY GIVEN:** That **QUALITY LOAN SERVICE CORPORATION** is duly appointed Trustee under a Deed of Trust dated 1/13/2006, executed by **CINDY J NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**, as Beneficiary, recorded 1/27/2006, as Instrument No. 2006-0064810, in book xxx, page xxx, of Official Records in the Office of the Recorder of RIVERSIDE County, California describing land therein as more fully described on the above referenced deed of trust.

Said obligations including one note for the sum of $308,000.00.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 12/19/2008 in the office of the Recorder of RIVERSIDE County, California, Instrument No. 08-664896, in Book , Page , of Official Records.

"This Instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

**NOW; THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated:    APR 2 6 2010

Quality Loan Service Corp., AS AGENT FOR BENEFICIARY   By: LSI Title Company

By: _____

Cherie Valencia

# EXHIBIT  F

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING

[AND WHEN RECORDED MAIL TO]
Nationstar Mortgage LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



DOC # 2013-0266012
06/04/2013 03:36P Fee:25.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | | CTY | UNI |



### CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned,MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 (469)549-2000.

Said Deed of Trust made by CINDY J. NEUDORFF and recorded on 01/27/2006 as Instrument # 2006-0064810, in Book , Page  in the office of the RIVERSIDE County Recorder, CA.

Property is commonly known as: 5191 INGLESTONE DRIVE, HEMET, CA 92545.

Dated on 05/22/2013 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS

By: _____
Nadine Homan
ASST. SECRETARY

### ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 05/22/2013 (MM/DD/YYYY), by Nadine Homan as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Nicole Baldwin EE 222285
Notary Public - State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
NSDAV 20383634 -- SugarBeet SEH5009995  MIN 100025440002956339 MERS PHONE 1-888-679-6377  T2113055814  [C]
FORM5\FRMCA1




# EXHIBIT  G

DOC # 2014-0269393
07/21/2014 01:07 PM Fees: $34.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:
LPS Default Title & Closing
3220 El Camino Real
Irvine, CA 92602

\**This document was electronically submitted
to the County of Riverside for recording\**
Receipted by: CTOLOSSA

WHEN RECORDED MAIL TO:
NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 448-480-014-9  TS No.: 9448-5725    TSG ORDER No.:140111308-CA-MAI

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

### 違約通知
注：本文件包含一个信息摘要

### 채무 불이행 통지서
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### AVISO DE INCUMPLIMIENTO
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

### PABATID NG HINDI PAGKAKABAYAD
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c) (2).)

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$9,590.39** as of 07/18/2014, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and Deed of Trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and Deed of Trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to

reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Nationstar Mortgage LLC
c/o NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802
Attn: Foreclosure Dept.
Phone: 800-766-7751
Fax: 562-983-5379

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That NBS Default Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 01/13/2006, executed by  CINDY J NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor(s), to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS, as beneficiary, recorded on 01/27/2006 as Document No.: 2006-0064810,  of Official Records in the Office of the Recorder of Riverside County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of $308,000.00 that that beneficial interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:
**Installment of Principal and Interest which became due on 02/01/2014, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.5. and/or 2923.55, wherever applicable. The Declaration is attached.

Dated: July 18, 2014

NBS Default Services, LLC, as Trustee for the Beneficiary

By: _____
Kylie Thomas, Foreclosure Associate

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

DOC #2014-0269393 Page 4 of 4 07/21/2014 01:07 PM

(Page 1 of 1)

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s): CINDY J NEUDORFF
Mortgage Servicer: Nationstar Mortgage LLC
Property Address: 5191 INGLESTONE DR HEMET CA 92545
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

   ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

   ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC
Mortgage Servicer

Dated: 5/15/2014

By: _____ 5/15/2014
Name (Print): Tommy Gidner

Assistant Secretary

# EXHIBIT  H

DOC # 2014-0404516
10/24/2014 11:15 AM Fees: $28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY
**LPS Default Title & Closing**
3220 El Camino Real
Irvine, CA 92602

AND WHEN RECORDED MAIL TO:
**NBS Default Services, LLC**
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: YSEGURA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 9448-5725   TSG Order No.: 140111308-CA-MAI A.P.N.: 448-480-014-9

## NOTICE OF TRUSTEE'S SALE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

出售通知

注：本文件包含一个信息摘要

매각 공고
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### AVISO DE VENTA
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

### PABATID NG PAGBEBENTA
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to
Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 01/13/2006.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale
contained in that certain Deed of Trust Recorded 01/27/2006 as Document No.: 2006-0064810, of
Official Records in the office of the Recorder of Riverside County, California, executed by: CINDY J
NEUDORFF, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor,  WILL
SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable in full at time of sale by
cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit
union, or a check drawn by a state or federal savings and loan association, savings association, or
savings bank specified in section 5102 of the Financial Code and authorized to do business in this
state).   All right, title and interest conveyed to and now held by it under said Deed of Trust in the
property situated in said County and state, and as more fully described in the above referenced Deed
of Trust.

DOC #2014-0404516  Page 2 of 2 10/24/2014 11:15 AM

**Sale Date & Time: 11/17/2014 at 09:00 AM**
**Sale Location: In front of the Corona Civic Center, 849 W. Sixth Street, Corona, CA 92882**

The street address and other common designation, if any, of the real property described above is purported to be: 5191 INGLESTONE DRIVE, HEMET, CA 92545

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$345,404.12** (Estimated).   Accrued interest and additional advances, if any, will increase this figure prior to sale.  It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call, (714)730-2727 for information regarding the trustee's sale or visit this Internet Web site, www.servicelinkASAP.com, for information regarding the sale of this property, using the file number assigned to this case, T.S.# 9448-5725. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802
800-766-7751
For Trustee Sale Information Log On To: www.servicelinkASAP.com or Call: (714)730-2727.

_____

**NBS Default Services, LLC, Nicole Rodriguez, Foreclosure Associate**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.